■ In the Matter of LUCREZIA D'A. GUSMAN, Also Known as CHRIS GUSMAN, Deceased. NORTH SHORE MASONS SUPPLY CORP. et al., Respondents; MICHAEL GUSMAN et al., Appellants. —In a proceeding to compel specific performance of a shareholders' agreement, Michael Gusman, Mitchell Gusman, and Marcus Gusman appeal from a decree of the Surrogate's Court, Queens County (Laurino, S.), dated November 29, 1989, which denied their motion for summary judgment and granted the petitioners' cross motion for summary judgment directing them to comply with the terms of the shareholders' agreement.

Ordered that the decree is affirmed, with costs payable by the appellants personally.

North Shore Masons Supply Corp. (hereinafter NSMS), a closely-held corporation, had three shareholders when the shareholders' agreement was entered into in 1963: Michael D'Amelio, its founder, held 260 shares or 52% of the stock, and his two daughters Angelina Balducci and Lucrezia D'Amelio Gusman each held 120 shares or 24% of the stock. The shareholders' agreement provided, in pertinent part, that

upon the death of a shareholder, unless written consent was first obtained from the other shareholders, the stock of the deceased shareholder had to be offered to NSMS which was required to redeem the stock at 100% of the amount stated in the "last executed Certificate of Value". In 1974 D'Amelio, Balducci, and Gusman amended the certificate of value and increased the redemption value from $480 per share to $1,700 per share.

Upon Michael D'Amelio's death in 1978, the value of the assets and real property of NSMS was approximately $700,000, and D'Amelio's shares of stock were redeemed for $442,000 pursuant to the shareholders' agreement. In 1988, when Lucrezia Gusman died, the value of the assets and real property of NSMS had increased to in excess of $3,500,000. Upon Lucrezia Gusman's death, her sons Michael Gusman, Mitchell Gusman, and Marcus Gusman, the Administrators, c.t.a., of her estate, refused to comply with the terms of the shareholders' agreement. Angelina Balducci and NSMS petitioned the Queens County Surrogate's Court to compel them to offer Lucrezia Gusman's shares for redemption. Lucrezia Gusman's sons, in their capacities as Administrators, c.t.a., then moved for summary judgment on the ground that the shareholders' agreement represented an illegal restraint upon the alienation of property. Angelina Balducci and NSMS cross-moved for summary judgment to compel the Administrators, c.t.a., to comply with the shareholders' agreement. The court granted the cross motion and ordered the Administrators, c.t.a., to comply with the terms of the shareholders' agreement, and this appeal ensued.

It is well settled that absent fraud, duress, or undue influence (Isaacson v Beau Label Corp., 93 AD2d 880), agreements between shareholders which call for the purchase and sale of stock by a shareholder who dies are valid and binding (Isaacson v Beau Label Corp., supra; Gabay v Rosenberg, 29 AD2d 653, affd 23 NY2d 747; Matter of Galewitz, 206 Misc 218, affd 285 App Div 947). Such restrictions are considered to be reasonable because they do not represent an "effective prohibition against transferability" (Allen v Biltmore Tissue Corp., 2 NY2d 534, 542), but merely limit the group to whom the shares may be transferred. Notably, the present case does not present a situation in which an individual has the arbitrary power to forbid a transfer of the shares which amounts to an " 'annihilation of property' " (Allen v Biltmore Tissue Corp., supra, at 542), but is simply an agreement by which the shareholders of a closely-held corporation agreed among them-

selves to dispose of the shares of a deceased shareholder. Therefore, the agreement is valid and enforceable. Thompson, J. P., Bracken, Rosenblatt and Miller, JJ., concur.